Marc T. Rasich (9279)
marc.rasich@stoel.com
David J. Williams (9186)
dj.williams@stoel.com
Michael R. Menssen (15424)
michael.menssen@stoel.com
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  801.328.3131

*Attorneys for Plaintiff Cvent, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| CVENT, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> RAINFOCUS, INC., a Delaware Corporation; JARED ERB, an individual; SHAWN JENKINS, an individual; KAKRA ASSASIE, an individual; TRAVIS CUSHING, an individual; BRANDON RICH, an individual; BRANDON BAILEY, an individual; SIRISH THAPA, an individual; RYAN THOMPSON, an individual; WAYNE WOODFIELD, an individual; DOUG BAIRD, an individual; BRIAN PULHAM, an individual; MIKE BUSHMAN, an individual; ROBBIE DODENBIER, an individual; TRICIA WILLIAMSON, an individual; LEWIS WALTHER, an individual; and MATHEW SPARKS, an individual, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:17-cv-00230-PMW <br><br> The Honorable Paul M. Warner |

Plaintiff Cvent, Inc. ("Cvent"), for its Complaint, alleges as follows:

## I.  INTRODUCTION

1.      This is an action for trade secret misappropriation, breach of contract, and intentional interference with contracts relating to Cvent's established client relationships, confidential and proprietary information, and trade secrets that are at the heart of Cvent's highly customized "large conference" event management software technology and related services. Cvent's "large conference" software and professional services solution platform is generally sold to companies in the Fortune 500 that host tens of thousands of attendees at their large user or marketing conferences.  This solution platform, which includes both software and professional services, is uniquely developed for each specific conference and the related brand.

2.      While Cvent believes in the benefits of fair competition, the Defendants' conduct described herein is not fair competition.  After making millions selling his business to Cvent's predecessors, Doug Baird ("Baird") has systematically stolen from Cvent much of its confidential and proprietary information; trade secrets; sales, service, and technology employees; and client goodwill (all of which was developed and earned over a period of years) and put it all to use for the benefit of his new company, RainFocus, Inc. ("RainFocus"), a direct competitor. RainFocus is now using Cvent's confidential and proprietary information, trade secrets, and talented workforce that have been developed through extensive time, effort, and money to directly compete with Cvent.  RainFocus has already taken the business of at least two of Cvent's larger established clients and is using Cvent's proprietary information and trade secrets to pursue others.

3.      More specifically, Baird's systematic raid began with RainFocus hiring away Cvent's  key technology, project management, and client services employees, all of whom

2

possess extensive expertise and knowledge of Cvent's proprietary and/or trade secret information, including event management technology, client-specific projects, and client-specific needs and preferences.  In one of his more recent efforts, Baird induced Cvent's Global Business Director, Irene Martynova ( "Martynova") to leave Cvent for RainFocus.  On her last day with Cvent, Martynova stole confidential information and trade secrets related to Cvent's client relationships, client needs and preferences, sales, services, and profitability of client projects and downloaded them to her personal email account.

4.      As Baird knows, each of the Cvent employees targeted and recruited for RainFocus is bound by a non-disclosure and non-use agreement prohibiting disclosure or use of Cvent's confidential information, proprietary information, and trade secrets to benefit RainFocus or any person or entity other than Cvent.  Nevertheless, RainFocus has intentionally induced each of the other Individual Defendants to breach their non-disclosure and non-use agreements for the benefit of RainFocus.  Baird  has also breached his own contractual obligations to Cvent by using confidential, proprietary, and trade secret information acquired while employed by Cvent to raid Cvent's key employees and steal its essential technology and client relationship information.

5.      With Cvent's former all-star team assembled and Cvent's confidential, proprietary, and trade secret information in hand, RainFocus has been targeting, soliciting, and diverting Cvent's clients based, no doubt, on a pitch that touts the fact that RainFocus has "the best" former Cvent employees whom the clients already know and trust, and who already know the clients' needs, preferences, and project history with Cvent, and the prices charged by Cvent – i.e., Cvent's proprietary and trade secret information.  That pitch has worked to divert business:

3

Cvent clients Oracle and VMware have already left Cvent for RainFocus.  And, upon information and belief, RainFocus is currently unfairly competing for more of Cvent's clients, including Gartner, Inc., Cisco, NetApp, RSA, and Trimble.  If RainFocus and the other Individual Defendants are not enjoined from any further assault on Cvent's business, Cvent's very existence may be jeopardized.

## II.  THE PARTIES

6.      Cvent is a Delaware corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at Tysons Corner, Virginia.

7.      Upon information and belief, Defendant RainFocus is a Delaware corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Lindon, Utah.

8.      Upon information and belief, Defendant Baird is an individual residing in the state of Utah.

9.      Upon information and belief, Defendant Kakra Assasie ("Assasie") is an individual residing in the state of Utah.

10.     Upon information and belief, Defendant Brandon Bailey ("Bailey") is an individual residing in the state of Utah.

11.     Upon information and belief, Defendant Mike Bushman ("Bushman") is an individual residing in the state of Utah.

12.     Upon information and belief, Defendant Travis Cushing ("Cushing") is an individual residing in the state of Utah.

13.     Upon information and belief, Defendant Robbie Dodenbier ("Dodenbier") is an individual residing in the state of Utah.

14.     Upon information and belief, Defendant Jared Erb ("Erb") is an individual residing in the state of Utah.

15.     Upon information and belief, Defendant Shawn Jenkins ("Jenkins") is an individual residing in the state of Utah.

16.     Upon information and belief, Defendant Brian Pulham ("Pulham") is an individual residing in the state of Utah.

17.     Upon information and belief, Defendant Brandon Rich ("Rich") is an individual residing in the state of Utah.

18.     Upon information and belief, Defendant Mathew Sparks ("Sparks") is an individual residing in the state of  Utah.

19.     Upon information and belief, Defendant Sirish Thapa ("Thapa") is an individual residing in the state of Utah.

20.     Upon information and belief, Defendant Ryan Thompson ("Thompson") is an individual residing in the state of Utah.

21.     Upon information and belief, Defendant Lewis Walther ("Walther") is an individual residing in the state of Utah.

22.     Upon information and belief, Defendant Tricia Williamson ("Williamson") is an individual residing in the state of Utah.

23.     Upon information and belief, Defendant Wayne Woodfield ("Woodfield") is an individual residing in the state of Utah.

5

24.     All of the individual defendants named in paragraphs 8-23 (collectively, the "Individual Defendants") are former employees of Cvent or its predecessors and are currently working for Cvent's competitor, RainFocus.

## III.  JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over the Defend Trade Secrets Act claims herein pursuant to 18 U.S.C. § 1836 and 28 U.S.C. § 1331.

26.     This Court also has subject matter jurisdiction over the state Uniform Trade Secrets Act claims, contract claims, and tort claims pursuant to 28 U.S.C. § 1367.

27.     This Court has personal jurisdiction over Defendants because, among other reasons, (a) Defendants reside, conduct business, and/or are employed in the state of Utah; (b) Defendants have misappropriated, disclosed, and/or used Cvent's trade secrets in the state of Utah; (c) Defendants knowingly interfered with contractual relationships in the state of Utah; and/or (d) Defendants have otherwise caused injury to Cvent in the state of Utah.  Further, the exercise of jurisdiction over Defendants comports with federal due process.

28.     Venue is proper under 28 U.S.C. § 1391(a) and (b).

## IV.  FACTUAL ALLEGATIONS

**A.     Cvent's Corporate History and Investment in Customized Event Management Software and Services.**

29.     Cvent and its predecessors built their business by strategically purchasing other businesses and acquiring those businesses' assets, including their technology, employee relationships, and client relationships.  One such company was Wingate Web, a technology company formerly owned by Baird, which was a provider of large enterprise event management software.

6

30.     Cvent's predecessor purchased Wingate Web from Baird in 2007 for $13,725,000 and other non-monetary compensation.  The purchase amount reflected the value of not only Wingate Web's event management software technology but also all of that company's tangible and intangible assets, including confidential information, proprietary information, trade secrets, know-how, client relationships, information about client needs and preferences, goodwill, vendor contacts, and vendor pricing.

31.     Baird remained an employee after the purchase of Wingate Web and became the surviving company's General Manager and Vice President of Strategy and Operations until 2013.  While working in those positions, Baird was responsible for Cvent's (and its predecessors') product development roadmap, technology developer resources, and executive client engagements.  He had access to Cvent's (and its predecessors') confidential and proprietary information and trade secrets, including but not limited to the Proprietary Information described below in paragraph 46, product designs, client requirements, client contracts, and pricing.   In his role, Baird also developed relationships with and learned client-specific proprietary and trade secret information about numerous  clients, including Cisco, Workday, Autodesk, VMware, Schwab, Oracle, Adobe, RSA Security, EMC, and Trimble.

32.     In 2009, Cvent's predecessor purchased Channel:1 Corp. ("Channel:1"), a provider of lead retrieval solutions owned, in part, by Edward J. Sherman ("Sherman") for  $1.1 million and other compensation.  On information and belief, Sherman received a substantial amount of the purchase price paid for Channel:1.  The purchase amount reflected the value not only of the lead retrieval solutions technology but also all of that company's tangible and intangible assets, including confidential information, proprietary information, trade secrets,

7

know-how, client relationships, information about client needs and preferences, goodwill, vendor contacts, and vendor pricing

33.     After the purchase of Channel:1, Sherman was employed as the surviving company's  President and Chief Strategy Officer until June 2015.  While working for Cvent's predecessors, Sherman learned about the skills, experience, and knowledge of their workforce, and had access to Cvent's (and its predecessors') confidential and proprietary information and trade secrets, including but not limited to Cvent's Proprietary Information described below in paragraph 46, financial information, employee rosters, product strategy information, go-to-market strategies, product development roadmaps, sales opportunities, sales forecasts, customer requirements, customer contracts, and pricing.  In his role, Sherman established significant relationships with, and learned client-specific proprietary and trade secrets about, numerous clients, including Gartner, Cisco, Autodesk, Amazon Web Services, VMware, Schwab, Oracle, Adobe, RSA Security, and EMC

34.     In addition to the purchases of Wingate Web and Channel:1, Cvent and its predecessors have spent millions of dollars and years of effort developing and refining the features for its event management software ("base code").   During that time, they have also spent countless hours and dollars developing customized event management software functionalities and applications to meet clients' specific needs.  No customers or clients or non-essential personnel are allowed access to this base code or to the source code related to client-specific needs and preferences.  As a result of all of these investments, Cvent has become a leader in the large conference event management space.

**B.     Cvent's Business Is Built on Long-Term Close Working Relationships with Its Clients to Produce Their Highly Customized Large Conferences and to Create**

**Event Management Software and Services Customized to Client Needs and Preferences.**

35.     Cvent (and its predecessors) provide highly customized "large conference" event management software technology and related services.  This specific software and professional services solution platform is generally sold to companies in the Fortune 500 that host tens of thousands of attendees at their large user or marketing conferences.  Cvent's software and professional services are uniquely developed for each specific conference and the related brand.

36.     Cvent's large conference event management software and services can be designed and customized for a wide range of functionalities and applications, including event planning, event marketing, attendee registration, coordination of presenters and exhibitors, distribution of presenters' materials, surveys, data analysis, and other customized functions all to meet client-specific needs and desires.

37.     Cvent is able to provide its market leading solution to clients by cultivating a long-term client relationship over successive projects and by acting in a consultative role to understand and anticipate the client's specific technological and services needs and preferences to produce each conference.

38.     Cvent's close collaboration with a client begins with Cvent's sales team cultivating a relationship and consulting with the client to learn, understand, and develop the client's specific needs and preferences for a highly customized large conference.  Members of the sales team have a high-level understanding of Cvent's event management software technology and of Cvent's software product developers' capabilities to create customized functionalities and applications.  When the sales team determines the client's needs for a conference, they use the information to generate a project proposal and negotiate pricing.  In

9

selling and servicing client accounts and learning each client's specific needs and preferences, sales team members acquire knowledge of and have access to Cvent's Proprietary Information as described below in paragraph 46.

39.     When the sales team generates a client account for a highly customized large conference, the professional services team, made up of specialists who are referred to as "business analysts" and "project managers," consult intensively with the client on an ongoing basis to understand and meet the client's specific technology and services needs and preferences. They work onsite as part of the client's team to determine for the client what technology features and services are needed to produce the highly customized large conference the client envisions. The business analysts and project managers become an essential part of the client's team that produces the highly customized large conference.

40.     Business analysts and project managers are also thoroughly familiar with the pricing, budgeting, timeline, staffing, and implementation strategy for each client project.  After a conference is completed, the professional services team consults with the client to understand and implement changes and/or added features that the client desires for its next conference.  In many respects, Cvent business analysts and project managers know more about clients' needs than the clients themselves.  This understanding is only gained through years of effort and collaboration with clients and the Cvent team for the benefit of the client and Cvent.  In their professional services roles, business analysts and project managers acquire knowledge of and have access to Cvent's Propriertary Information as described below in paragraph 46.

41.     Throughout the project and after each conference, project managers and business analysts regularly consult with specialists who are referred to as "product developers" and

"system architects."  Product developers and system architects have an in-depth understanding of

Cvent's event technology base code and how that software can be configured to create

customized functionalities and applications to meet a client's specific needs or preferences.  The

product developers and system architects sometimes write new code for a client-specific function

or application.   After the software code is written, quality assurance employees in the

development department test the newly written code to assure that it performs as intended.  In

working on Cvent's event management software technology and on specific client projects,

product developers, system architects, and quality assurance employees acquire knowledge of

and have access to Cvent's Proprietary Information as described below in paragraph 46.

42.     Once customized code is developed to meet client-specific needs, business

analysts and project managers assist the client to deploy the customized event management

technology and provide related onsite services during an event.  The onsite services may include

operating the technology applications, helping to manage the conference, collecting data, and

strategizing with the client post-conference to prepare for the next conference, usually 12 months

later.

43.     The client's technological and service needs and preferences are built upon for

each successive conference that Cvent produces for the client.  When the client's specific event

management technology needs and preferences are understood, business analysts and project

managers prepare this information, which is then stored in Cvent's internal computer databases,

including in a "user story" format written in a database called "JIRA."  As the professional

services team produces the highly customized large conference, they add more details for the

11

user story.  After a conference is completed, the professional services team adds the client's specific requests, changes, and preferences for the next event.

44.     The  user story information enables Cvent's sales team, business analysts, project managers and product developers to anticipate the client's future needs and to innovate Cvent's event management technology, customized functionalities and applications, and services for the client's event in each successive year.  Cvent's software product developers also review the user story and rely on the information to write software code to meet the client's evolving needs from one conference to the next.  As further described below in paragraph 46, Cvent considers and treats the "user story" as Proprietary Information that encompasses trade secrets.

## C.     Confidential Proprietary Information and Trade Secrets Are Essential for Cvent to Compete.

45.     Cvent successfully competes for business to manage and produce highly customized large conferences and maintains its long-term client relationships because of the confidential information, proprietary information, and trade secrets that Cvent has been investing in and developing for years.  Cvent's confidential, proprietary, and trade secret information is essential for it to compete.  This information is not shared with or known through proper means by Cvent's competitors.  It is likewise not reasonably ascertainable by those competitors without the expenditure of hundreds of thousands (if not millions) of dollars, and years of effort.

46.     Cvent and its predecessors have considered and treated the following as their confidential information, proprietary information, and trade secrets (hereinafter "Proprietary Information"):

> a.  All information and materials relating to Cvent's existing software products and software in the various stages of research and development, including, but not limited to, source codes, object codes, design specifications, design notes, flow

12

charts, graphics, graphical user interfaces, coding sheets, product plans, know-how, negative know-how, test plans, business investment analysis, marketing and functional requirements, algorithms, and product bugs and client technical support cases which relate to the software;

b.  All internal business information, procedures, and policies, including, but not limited to, licensing techniques, business plans, financial information, budgets, forecasts, product margins, product costs, service and/or operation manuals and related documentation (including drawings), and other such information that relates to the way that Cvent conducts its business, sales, and client services;

c.  Any and all plans and/or discussions regarding proposed advertising, public relations, and promotional campaigns;

d.  Vendor names, vendor pricing, and other vendor information;

e.  Any and all client sales and marketing information, including but not limited to sales and marketing studies, sales forecasts, marketing and sales promotion plans, product launch plans, sales call reports, and competitive intelligence information;

f.  Any and all internal price lists, discount matrixes, pricing calculators, and pricing strategies;

g.  Any and all client lists and corresponding information about client contacts;

h.  Any and all client contracts, pricing structures, contract negotiations, profitability analyses, client relations materials, and client service materials, and the type, quantity, and specifications of technology and services purchased, leased, or licensed by the client;

i. Any and all information related to client needs, preferences, conference production, and project histories, including but not limited to all client contact information, all user story information, and all project pricing, budgeting, implementation, staffing, and management;

j. Any and all information related to upcoming project opportunities and future business opportunities with clients;

k.  Prospective client information;

l.  Any and all Cvent employee information, including, but not limited to, internal organization, lists of employees or consultants, phone lists, employee compensation, and any other information regarding Cvent's employees or consultants;

13

m.  Any and all of Cvent's legal rights, including but not limited to trade secrets as defined by applicable law, pending patents, inventions and other discoveries, claims, pending trademarks, copyrights, and litigation and/or arbitrations involving Cvent;

n.  Any and all confidential information that gives Cvent a competitive edge that an employee obtains while working for Cvent (or any of its predecessors); and

o.  Any and all other knowledge or information regarding Cvent's property, business, and affairs that Cvent considers and keeps confidential.

47.     Cvent and its predecessors have protected this Proprietary Information by, among other things, requiring their employees to enter into a non-disclosure /non-use agreement prohibiting the direct or indirect disclosure or use of Cvent's confidential, proprietary or trade secret information without the express consent of Cvent and in a form substantially similar to the following:

You understand that your employment creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to you or created by you that relates to the business of the [Cvent] or to the business of its customers, licensees, suppliers or any other party with whom the [Cvent] agrees to hold information of such party in confidence (the "Proprietary Information").

You understand and agree during your employment with the Company or thereafter to treat and preserve Proprietary Information and materials as strictly confidential.  Except as authorized by the Company's Chief Executive Officer (but in all cases preserving confidentiality by following Company policies and obtaining appropriate non-disclosure agreements), you further agree that you will not directly or indirectly transmit or disclose Proprietary Information to any person, corporation, or other entity for any reason or purpose whatsoever.

…

You understand and agree that the Proprietary Information is the exclusive property of [Cvent], and that, during your employment; you will use and disclose Proprietary Information only for [Cvent's] benefit and in accordance with any restrictions placed on its use or disclosure by [Cvent].  After termination of your

14

91578853.1 0202763-00001

employment for any reason, you will not use in any manner or disclose any
Proprietary Information except to the extent compelled by applicable law;
provided that in the event you receive notice of any effort to compel disclosure of
Proprietary Information for any reason, you will promptly and in advance of
disclosure notify [Cvent] of such notice and fully cooperate with all lawful
[Cvent] efforts (through their counsel or otherwise) to resist or limit such
disclosure.

48.     In addition, Cvent and its predecessors have protected their Proprietary

Information by restricting access to those with a "need to know,"  requiring user name and

password-protected access to the information stored in Cvent's data base, including but not

limited  JIRA and BitBucket, limiting access to sales and financial information in SalesForce and

FinancialForce, and similar measures.

**D.     All of the Individual Defendants Have Key Cvent Proprietary Information.**

49.     Through employment with Cvent and its predecessors, each of the Individual

Defendants has established relationships with Cvent's clients and/or acquired Cvent's

Proprietary Information, which gives Cvent a competitive advantage.

50.     Cushing was the director of product management for Cvent's professional

services team and was responsible for the product management of the events product line.  He

worked closely with Cvent and its predecessors' clients, developing one-on-one relationships

with client contacts, and gaining significant inside knowledge about each client's needs and

preferences.  Cushing also acquired substantial knowledge of and had access to Proprietary

Information, including, but not limited to product design, product documentation, and product

roadmaps.

51.     Thapa, Dodenbier, Williamson, and Sparks were business analysts and/or project

managers.  Each developed significant direct relationships with Cvent and its predecessors'

clients and acquired critical knowledge of each client's specific needs, preferences, and customized event management technology and services packages.  As the key client services employees, they all acquired significant knowledge of and had access to Proprietary Information.

52.     Bushman was Cvent's Director of Engineering, accessing and gaining extensive knowledge about Cvent and its predecessors' event management software, events product line, visions, plans and specifications for further development of the "base code," research and development, and testing and refining of  client-specific customized functions and applications. Thus, Bushman's responsibilities required him to know, use, create, and have access to certain Proprietary Information.

53.      Woodfield was a Systems Architect and, previously, was a Director of Development.  He wrote event management software code for the base product and created and implemented client-specific functionalities.  He has substantial knowledge of and access to Proprietary Information and developed significant relationships with Cvent and its predecessors' clients.

54.     Erb, Jenkins, Assasie, Thompson,  Pullman, and  Walther worked as product developers who wrote event management software code to create or implement client-specific functionalities and applications and/or as quality assurance technicians who tested and refined the customized features.   As Cvent and its predecessors' software developers, they all had substantial knowledge of and access to Proprietary Information.

55.     Rich and Bailey were system architects with responsibility for client use of Cvent and its predecessors' systems, client information, application of system software, and

establishing best practices.  They developed significant relationships with Cvent and its

predecessors' clients and had substantial knowledge of and access to Proprietary Information.

**E.      Doug Baird Leaves Cvent to Form His Own Company RainFocus And Raids the Cvent Employees to Compete Unfairly With Cvent.**

56.      In May 2013, Baird left Cvent's predecessor, and later formed Defendant

RainFocus.  Upon his departure, both as a result of the Wingate Web acquisition and his

continued employment with Active/Cvent, Baird was subject to non-disclosure/non-use

agreements substantially similar to the one set forth above in paragraph 47. These agreements

prohibit Baird from disclosing or using Cvent's Proprietary Information for any purpose unless

agreed to in writing by Cvent.  Cvent has never given Baird such consent to disclose and/or use

its Proprietary Information for purposes of recruiting its employees, competing with Cvent, or

aiding a competitor of Cvent.

57.      Up until about July 2015, Baird and RainFocus were not in the business of

providing a full range of event management technology and services.  Instead, RainFocus

specialized in designing event management software that gathers and analyzes data from clients'

events.  The software can be customized to collect specific types of data and generate results for

the client to analyze.

58.      Because Cvent and its predecessors did not provide this type of technology

product to its clients, it offered RainFocus's software applications as a complement to the Cvent

event management technology and services packages.  RainFocus did not provide any

competitive event management technology or service to Cvent's clients.

59.     Although RainFocus sometimes worked directly with Cvent's clients, those client contacts were strictly for the purpose of meeting the clients' needs for RainFocus's data gathering software product and applications.

60.     Despite posing RainFocus as a complimentary business, Baird's true intentions were to create a competing business and to use Cvent's Proprietary Information, trade secrets and employees to do so.

61.     In furtherance of his goal, upon information and belief, Baird used his knowledge of Cvent's workforce to target, solicit, and hire key employees away from Cvent to use their skills, experience, and knowledge of Cvent's clients and Proprietary Information to compete with Cvent.

62.     For example, in June 2015, after conversations with Baird about future plans for Rainfocus, Sherman ended his employment with Cvent, effective June 30, 2015.

63.     When Sherman left Cvent he was subject to a non-solicit agreement for a term of two years and a non-competition agreement for a term of one year.  He also executed a separation agreement in which he acknowledged that, as a senior executive of Cvent, he had regular and substantial exposure to Cvent's Proprietary Information and reaffirmed his obligation not to use or disclose that information without Cvent's consent.

64.     Upon information and belief, during the terms of Sherman's non-compete and non-solicitation restrictions, he acted as a consultant to negotiate financing for RainFocus's business expansion, and he also solicited Cvent's clients and/or employees on behalf of RainFocus.

65.     Further, in July 2016, Sherman began employment at RainFocus as the company's President, a position with the same title and the same or substantially similar responsibilities as Sherman's position at Cvent.

66.     Upon information and belief, Sherman is assisting RainFocus with responding to a Request for Proposal for Gartner, Inc., one of Cvent's larger clients with whom Sherman is thoroughly familiar as a result of his employment with Cvent.

67.     Similarly, in March 2016, again, after discussions with Baird, Martnynova ended her employment with Cvent.

68.     On March 15 and 17, 2016, just before her last day of employment at Cvent, and in violation of her contractual and statutory obligations to Cvent, she forwarded from her Cvent email account to her personal Yahoo email account a number of emails that contain Cvent's Proprietary Information, including the following:

        a.      A list of Cvent's clients in 2017 with corresponding information about client contacts;

        b.      A detailed account profile for Cvent's client Cisco;

        c.      The revenue and profitability for Cvent's client accounts;

        d.      A project plan and implementation strategy for Cvent's client Credit Suisse;

        e.      Cvent's pricing calculator;

        f.      Cvent's mockup of business cases for preparing proposed solutions and pricing for clients; and

        g.       Cvent's work assignment strategy for client projects.

69. Upon information and belief, Martynova has since disclosed the Cvent Proprietary Information and trade secrets described above to RainFocus and used that information in her role with RainFocus and for RainFocus's benefit.

70. Upon information and belief, Baird, individually, and through RainFocus, has likewise targeted, solicited, induced, hired, and employed each of the other Individual Defendants so that RainFocus can compete with Cvent without having to independently develop the Proprietary Information and relationships that Cvent has spent millions of dollars and years of effort to acquire.

71. Upon information and belief, RainFocus and Baird have directly or indirectly induced, solicited or encouraged each of the Individual Defendants to terminate their employment with Cvent in order to work for RainFocus knowing that each of the Individual Defendants had contractual and/or statutory non-compete, non-solicitation and non-disclosure obligations.

72. Upon information and belief, RainFocus is employing each of the Individual Defendants in a position with the same or substantially similar functions and responsibilities as the position they held at Cvent, regardless of their new title at RainFocus.

73. Upon information and belief, each of the Individual Defendants is performing the same or substantially similar duties at RainFocus for the same or substantially similar clients or potential clients as they did at Cvent.

74. Upon information and belief, each of the Individual Defendants has violated their agreement with Cvent by using and disclosing Cvent's Proprietary Information to help RainFocus target, solicit, and obtain the business of Cvent's clients and to provide those clients

20

with the same event management technology and services that each of the Individual Defendants had provided to them at Cvent using Cvent's Proprietary Information.

**F.     RainFocus Has Been Using the Proprietary Information Stolen Through the Individual Defendants to Target, Solicit, and Divert the Business of Cvent's Clients.**

75.     Upon information and belief, from the time that the Individual Defendants began moving from Cvent to RainFocus, RainFocus has acquired and used Cvent's Proprietary Information to target, solicit, and obtain the business of Cvent's clients.

76.     Cvent's client, Oracle, became a RainFocus client sometime during the summer of 2015.  Upon information and belief, RainFocus is providing Oracle event management software and services through the same Individual Defendants who provided the software and services to Oracle while at Cvent.

77.     In addition, Cvent's client, VMWare, became a RainFocus client around October 2016. Upon information and belief, RainFocus is providing VMWare event management software and services through the same Individual Defendants who provided the software and services to VMWare while at Cvent.

78.     Upon information and belief, RainFocus is using knowledge of Cvent client contacts, Proprietary Information and trade secrets with the assistance of other former Cvent employees responsible for the Gartner, Inc. relationship while at Cvent, to respond to a Request for Proposal for Cvent's client Gartner, Inc., and Gartner, Inc. is contemplating taking its business to RainFocus.

79.     Upon information and belief, RainFocus also is using the Cvent client contacts Proprietary Information and trade secrets to attempt to divert the business of other Cvent clients, including Cisco, NetApp, RSA, and Trimble.

**G.** **Cvent Has Been, and Will Be, Severely and Irreparably Harmed by Defendants'
Misappropriation of Its Trade Secrets and Other Proprietary Information.**

80.     Cvent and its predecessors developed their Proprietary Information at great

expense and through years of client consultations, client project implementation,

experimentation, and trial and error.

81.     The growth, profitability, and even survival of companies like Cvent are

dependent upon the protection of its client relationships, Proprietary Information, and trade

secrets.

82.     RainFocus' ongoing exploitation of stolen Proprietary Information has already

caused Cvent irreparable harm and threatens the existence of a fair and competitive industry.

Allowing the conduct to continue and awarding monetary compensation after the fact, cannot

sufficiently remedy the harm caused to Cvent directly and indirectly by RainFocus' unlawful

conduct.

83.     With this action, Cvent seeks to vindicate its rights, prevent any further misuse of

its Proprietary Information, including all trade secrets, and obtain compensation for its damages

and for Defendants' breach of contract and intentional interference with contractual relations.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Federal Defend Trade Secrets Act - All Defendants)**

84.     Cvent incorporates and realleges the allegations set forth above as though fully set

forth herein.

85.     Cvent owns and possesses certain confidential, proprietary, and trade secret

information, including, but not limited to, the Proprietary Information described herein.

22

86.     Cvent's confidential, proprietary, and trade secret information relates to products and services used and sold, or intended to be used and sold, in interstate or foreign commerce.

87.     Cvent has taken reasonable measures to keep such information secret and confidential, including by requiring its employees to enter a confidentiality and non-disclosure agreement and by limiting and password protecting access to information contained in Cvent's data base, including but not limited to JIRA, Bitbucket, SalesForce, FinancialForce, and other Proprietary Information.

88.     Due to these security measures, Cvent's confidential, proprietary, and trade secret information is not available for others in Cvent's industry to use through any legitimate means.

89.     Cvent's confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to the public and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

90.     Upon information and belief, Baird and RainFocus have recruited and hired Cvent employees after the effective date of the Federal Defend Trade Secrets Act, including, among others discussed herein, Sherman in July 2016, Jenkins in September 2016, Robby Sacora (Professional Services Manager) in October 2016, and Walther in January 2017.

91.     In violation of Cvent's rights, Defendants have misappropriated Cvent's confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.  This misappropriation was intentional, knowing, willing, malicious, fraudulent and oppressive.

91578853.1 0202763-00001

92.     Upon information and belief, if Defendants are not enjoined, they will continue to misappropriate and use Cvent's trade secret information to their own benefit and to Cvent's detriment.

93.     Cvent is entitled to an injunction under 18 U.S.C. § 1836(b)(3)(A) to prevent any retention, use or threatened use or disclosure by Defendants, or any one of them, of Cvent's confidential, proprietary, and trade secret information.

94.     Cvent is entitled to recover an award of damages for actual loss caused by acquisition, disclosure, or use of Cvent's trade secrets, including but not limited to lost profits, if any.

95.     Cvent is further entitled to recover any unjust enrichment (not already included in the calculation of actual loss) that was received by Defendants as a result of Defendants' acquisition, disclosure, or use of Cvent's trade secrets.

96.     Because Defendants willfully and maliciously misappropriated Cvent's trade secrets, Cvent is entitled to recover an award of exemplary damages up to two times the sum of actual loss and unjust enrichment damages.

97.     Because Defendants willfully and maliciously misappropriated Cvent's trade secrets, Cvent is entitled to recover an award of reasonable attorneys' fees incurred in this action.

## SECOND CLAIM FOR RELIEF
### (Violation of Utah Uniform Trade Secrets Act - All Defendants)

98.     Cvent incorporates and realleges the allegations set forth above as though fully set forth herein.

99.     Cvent's confidential, proprietary, and trade secret information, including, but not limited to, Cvent's Proprietary Information as described above, constitute trade secrets as defined by the Utah Uniform Trade Secrets Act, Utah Code § 13-24-2.

100.    Defendants had access to, became familiar with, and gained intimate knowledge of Cvent's confidential, proprietary, and trade secret information.

101.    As alleged above, Cvent derives independent economic value, both actual and potential, from this confidential, proprietary, and trade secret information not being generally known to the public and not being readily ascertainable through proper means to other persons who can obtain economic value from its disclosure or use.

102.    As alleged above, Cvent took reasonable efforts to maintain the secrecy of this confidential, proprietary, and trade secret information, including by requiring its employees to enter a confidentiality and non-disclosure agreements and by limiting and password protecting access to information contained in Cvent's data bases, including but not limited to JIRA, BitBucket, Salesforce, and FinancialForce as described herein.

103.    The Defendants have, without Cvent's consent, disclosed and used, threatened to disclose or use or will inevitably disclose and use, Cvent's confidential, proprietary, and trade secret information to benefit RainFocus, Cvent's competitor.

104.    Defendants' conduct constitutes misappropriation under the Utah Uniform Trade Secrets Act.  Defendants knew or should have known under the circumstances that: (a) the information misappropriated was confidential information, proprietary information, and trade secrets; (b) the confidential information, proprietary information, and trade secrets were acquired through improper means; (c) the confidential information, proprietary information, and trade

25

secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; and/or (d) the confidential information, proprietary information, and trade secrets were derived from or through a person who owed a duty to Cvent to maintain their secrecy or limit their use.

105.    Pursuant to Utah Code § 13-24-4(1), Cvent is also entitled to recover both the actual loss caused by the misappropriation and the unjust enrichment that is not taken into account in computing actual loss.

106.    As a direct and proximate result of Defendants' conduct, the injury that Cvent has incurred, and will continue to incur, includes damages, costs, and expenses, including attorneys' fees.

107.    Upon information and belief, unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use Cvent's confidential information, proprietary information, and trade secrets to enrich RainFocus and to divert business from Cvent to RainFocus.  Pursuant to Utah Code § 13-24-3, Cvent is entitled to an injunction against the misappropriation and continued threatened misappropriation of confidential information, proprietary information, and trade secrets as alleged herein.  Cvent further asks the Court to restrain Defendants from using all confidential, proprietary, and trade secret information misappropriated from Cvent and to return all such information to Cvent.

108.    Defendants have misappropriated Cvent's confidential, proprietary, and trade secret information willfully and maliciously.  Accordingly, Cvent is entitled to an award of its attorneys' fees and an award of exemplary damages, pursuant to Utah Code §§ 13-24-4 and -5.

## THIRD CLAIM FOR RELIEF

**(Violation of California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* - Baird, Bailey, Cushing, and Erb)**

109.    Cvent incorporates and realleges the allegations set forth above as though fully set forth herein.

110.    Cvent's confidential, proprietary, and trade secret information, including, but not limited to, Cvent's Proprietary Information as described above, constitutes trade secrets as defined by the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*

111.    Baird, Bailey, Erb, and Cushing had access to, became familiar with, and gained intimate knowledge of Cvent's confidential information, proprietary information, and trade secrets.

112.    As alleged above, Cvent derives independent economic value, both actual and potential, from this confidential, proprietary, and trade secret information not being generally known to the public or readily ascertainable through proper means to other persons who can obtain economic value from disclosure or use of the information.

113.    As alleged above, Cvent has taken reasonable efforts to maintain the secrecy of its confidential, proprietary, and trade secret information in order to protect its trade secrets, including by requiring its employees to enter a confidentiality and non-disclosure agreement and by limiting and password protecting access to information contained in Cvent's data bases, including but not limited to JIRA, BitBucket, SalesForce, and FinancialForce and as described herein.

114.    Baird, Bailey, Cushing, and Erb have, without Cvent's consent, disclosed and used, or will inevitably disclose and use, Cvent's confidential, proprietary, and trade secret information to benefit RainFocus, Cvent's competitor.

115.    Baird, Bailey, Cushing, and Erb's conduct constitutes misappropriation under the California Uniform Trade Secrets Act.  Baird, Bailey, Cushing, and Erb each knew or should have known under the circumstances that:  (a) the information misappropriated was confidential information, proprietary information, and trade secrets; (b) the confidential information, proprietary information, and trade secrets were acquired through improper means; (c) the confidential information, proprietary information, and trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; and/or (d) the confidential information, proprietary information, and trade secrets were derived from or through a person who owed a duty to Cvent to maintain their secrecy or limit their use.

116.    As a direct and proximate result of Baird, Bailey, Cushing, and Erb's conduct, Cvent has incurred, and will continue to incur, additional damages, costs, and expenses, including attorneys' fees.

117.    The aforementioned acts of Baird, Bailey, Cushing, and Erb were willful, malicious, and fraudulent.  Cvent is therefore entitled to exemplary damages under Cal. Civ. Code § 3426.3(c).

118.    Upon information and belief, unless and until enjoined and restrained by order of this Court, Baird, Bailey, Cushing, and Erb will continue to retain, disclose, and use, or will inevitably disclose and use, Cvent's confidential, proprietary, and trade secret information to benefit RainFocus, Cvent's competitor, and to divert business from Cvent to RainFocus.

91578853.1 0202763-00001

Pursuant to Cal. Civ. Code § 3426.2, Cvent is entitled to an injunction against the misappropriation and continued threatened misappropriation of confidential information, proprietary information, and trade secrets as alleged herein and further asks the Court to restrain Baird, Bailey, Cushing, and Erb from using all confidential, proprietary, and trade secret information misappropriated from Cvent and to return all such information to Cvent.

119.    Pursuant to Cal. Civ. Code § 3426.4 and related law, Cvent is entitled to an award of attorneys' fees for Baird, Bailey, Cushing, and Erb's misappropriation of trade secrets.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract - Individual Defendants)

120.    Cvent incorporates and realleges the allegations set forth above as though fully set forth herein.

121.    As described herein, each Individual Defendant entered into a valid and enforceable agreement with Cvent (or its predecessors) in which s/he has agreed, among other things, not to disclose or use Cvent's Proprietary Information for any purpose without Cvent's express consent.

122.    Cvent has fully performed its contractual obligations under each of these agreements.

123.    Cvent has never provided the Individual Defendants, or any of them, with consent to disclose or use its Proprietary Information for any purpose unrelated to their employment with Cvent (or its predecessors) and/or that does not benefit Cvent.

124.    Each Individual Defendant has breached his/her agreement with Cvent by failing to abide by his/her confidentiality and non-use obligations thereunder.  Specifically, each Individual Defendant has misappropriated, disclosed and/or used or threatened to disclosure or

29

use Cvent's Proprietary Information directly or indirectly for the benefit of Cvent's competitor RainFocus, and/or for the benefit of Baird, and/or for his/her personal gain.

125.    On or about October 9, 2015, Jenkins left his employment with Cvent.  At the time of his departure, Jenkins was subject to a 18-month non-compete agreement and two-year non-solicitation agreement.  Upon information and belief, Jenkins began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

126.    On or about July 2, 2015, Thapa left her employment with Cvent.  At the time of her departure, Thapa was subject to a 18-month non-compete agreement and two-year non-solicitation agreement. Upon information and belief, Thapa began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

127.    On or about December 15, 2015, Thompson left his employment with Cvent.  At the time of his departure, Thompson was subject to a 18 month non-compete agreement and two-year non-solicitation agreement. Upon information and belief, Thompson began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

128.    On or about August 9, 2016, Pulham left his employment with Cvent.  At the time of his departure, Pulham was subject to a 18-month non-compete agreement and two-year non-solicitation agreement.  Upon information and belief, Pulham began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

129.    On or about September 9, 2016, Woodfield left his employment with Cvent.  At the time of his departure, Woodfield was subject to a 18-month non-compete agreement and two-year non-solicitation agreement.  Upon information and belief, Woodfield began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

130.    On or about January 20, 2017, Dodenbier left his employment with Cvent.  At the time of his departure, Dodenbier was subject to a 18-month non-compete agreement and two-year non-solicitation agreement.  Upon information and belief, Dodenbier began work at RainFocus, a direct competitor of Cvent, within the restrictive period.

131.    Cvent has suffered and will continue to suffer damages as a direct and proximate result of each Individual Defendant's breach of contract in an amount to be decided at trial.  In addition, Cvent cannot be adequately compensated through monetary relief and requires preliminary injunctive relief in addition to compensatory and punitive damages.

**FIFTH CLAIM FOR RELIEF**
**(Tortious Interference with Contract - RainFocus, Baird)**

132.    Cvent incorporates and realleges the allegations set forth above as though fully set forth herein.

133.    As described herein, Individual Defendants Assasie, Bailey, Bushman, Cushing, Dodenbier, Erb, Jenkins, Pulham, Rich, Sparks, Thapa, Thompson, Walther, Williamson, and Woodfield  each entered into a valid and enforceable agreement with Cvent (or its predecessors) in which s/he has agreed, among other things, not to disclose or use Cvent's Proprietary Information for any purpose without Cvent's express consent.

134.    Cvent has never provided the Individual Defendants, Assasie, Bailey, Bushman, Cushing, Dodenbier, Erb, Jenkins, Pulham, Rich, Sparks, Thapa, Thompson, Walther, Williamson, and Woodfield, or any of them, with consent to disclose or use its Proprietary Information for any purpose unrelated to their employment with Cvent (or its predecessors) and/or that does not benefit Cvent.

135.    Baird and RainFocus were aware and had knowledge of the Individual Defendants' agreements with Cvent and of their respective confidentiality and non-use obligations under those agreements.

136.    RainFocus and Baird intentionally encouraged, persuaded, convinced, enticed, and/or caused Individual Defendants Assasie, Bailey, Bushman, Cushing, Dodenbier, Erb, Jenkins, Pulham, Rich, Sparks, Thapa, Thompson, Walther, Williamson, and  Woodfield  to breach their confidentiality and non-use agreements with Cvent by disclosing and using Cvent's Proprietary Information for the benefit of  RainFocus and to divert business from Cvent to RainFocus.

137.    RainFocus and Baird interfered with Individual Defendants Assasie, Bailey, Bushman, Cushing, Dodenbier, Erb, Jenkins, Pulham, Rich, Sparks, Thapa, Thompson, Walther, Williamson, and  Woodfield's contractual obligations by improper means that were contrary to statutory, regulatory, and/or common law, and/or violated established standards in the industry.

138.    In addition, Individual Defendants Jenkins, Thapa, Thompson, Pulham, Woodfield, and Dodenbier were each subject to a valid and enforceable 18-month non-compete agreement and two year non-solicitation agreement.

139.    Baird and RainFocus were aware and had knowledge of the Individual Defendants' agreements with Cvent and of their respective non-compete and non-solicitation obligations under those agreements.

140.    RainFocus and Baird intentionally encouraged, persuaded, convinced, enticed, and/or caused Individual Defendants Jenkins, Thapa, Thompson, Pulham, Woodfield, and

Dodenbier to breach their non-compete and non-solicitation agreements with Cvent by becoming employees of RainFocus with in the restrictive periods of those agreements.

141.    RainFocus and Baird interfered with Individual Defendants Jenkins, Thapa, Thompson, Pulham, Woodfield, and Dodenbier's contractual obligations by improper means that were contrary to statutory, regulatory, and/or common law, and/or violated established standards in the industry.

142.    As a direct and proximate result of RainFocus and Baird's interference, Cvent has suffered and will continue to suffer damages in an amount to be decided at trial.  In addition, Cvent cannot be adequately compensated through monetary relief and requires preliminary injunctive relief in addition to compensatory and punitive damages.

**V. RELIEF REQUESTED**

Cvent requests entry of judgment in its favor as follows:

1.      A preliminary injunction ordering each Defendant, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them,

- To cease using or disclosing any of Cvent's Proprietary Information or trade secrets;

- To return to Cvent any of its Proprietary Information in Defendant's possession or control; and

- To cease any currently pending sale or offer of sale of any event management software and services to any current or former Cvent client/customer that is based in any way on Cvent's trade secret information, including, without limitation,  any of Cvent's Proprietary Information  described herein.

33

2.      A permanent injunction ordering RainFocus and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them,

- To cease using or disclosing any of Cvent's Proprietary Information or trade secrets;

- To return to Cvent any of its Proprietary Information in RainFocus's possession or control; and

- To cease any currently pending sale or offer of sale of any event management software and services to any current or former Cvent client/customer that is based in any way on Cvent's trade secret information, including, without limitation, any of Cvent's Proprietary Information described herein.

3.      An order finding that Cvent has been damaged by RainFocus's conduct and an award of damages in an amount to be determined at trial but in no event less than Cvent's lost profits.

4.      An order finding that RainFocus has been unjustly enriched by its conduct and that RainFocus is liable to Cvent for a disgorgement of profits in an amount to be determined at trial but in no event less than restitution of any revenues or other benefit obtained by RainFocus as a result of its conduct.

5.      An order awarding punitive damages on account of RainFocus's willful misappropriation of trade secrets, malicious conversion of Cvent's Proprietary Information, and intentional interference with contracts and prospective economic relations in an amount to be determined at trial.

6.      An order awarding double damages for the harm caused to Cvent by RainFocus's willful misappropriation of Cvent's trade secrets.

34

7.      An order awarding Cvent, as the prevailing party, reasonable attorneys' fees as deemed appropriate by the Court.

8.      An award of costs to Cvent, as the prevailing party, as deemed appropriate by the Court.

9.      Pre-judgment and post-judgment interest at the maximum rate provided by law.

10.     Such other and further relief as this Court may deem appropriate under the circumstances.

DATED:  March 24, 2017.

STOEL RIVES LLP


/s/ Marc T. Rasich
Marc T. Rasich
David J. Williams
Michael R. Menssen

Attorneys for Plaintiff Cvent, Inc.

35